IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TIA C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:24cv65 (WEF) |
| | ) |
| LELAND DUDEK,[1] | ) |
| ACTING COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the parties' cross-motions for summary judgment. (Dkts. 6, 9). Pursuant to 42 U.S.C. §§ 405(g), Plaintiff seeks judicial review of the final decision of Martin O'Malley, Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's claims for supplemental security income (SSI) under the Social Security Act. The Commissioner's final decision is based on a finding by the Administrative Law Judge ("ALJ") and Appeals Council for the Office of Appellate Operations ("Appeals Council") that Plaintiff was not disabled as defined by the Social Security Act and applicable regulations.[2]

For the following reasons, the Court will **REVERSE** the ALJ's decision, **GRANT** Plaintiff's Motion (Dkt. 6), and **DENY** the Commissioner's Motion (Dkt. 9), and **REMAND** the case to the agency for further proceedings consistent with this Opinion and Order.

---

[1] Leland Dudek is the Acting Commissioner of Social Security as of the date of the issuance of this Order and Opinion and has been substituted as named defendant accordingly.

[2] The Administrative Record ("AR") in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). (Dkt. 5). In accordance with those rules, this Opinion and Order excludes any personal identifying information such as plaintiff's social security number and date of birth (except for the year of birth), and the discussion of Plaintiff's medical information is limited to the extent necessary to analyze the case.

1

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On January 12, 2021, Plaintiff applied for SSI alleging a disability onset date of March 14, 2020. (AR 17, 69, 178–85). By way of background, Plaintiff was born in 1981 and was thirty-eight years old at the time of the alleged onset of disability. (AR 55). Plaintiff has a twelfth-grade education and completed training to become a certified veterinary assistant. (AR, 55 208). From 2018 to 2020, Plaintiff worked as an electric meter installer or utility line "locator." (AR 29, 208). Plaintiff suffered a traumatic brain injury, skull fractures, and encephalomalacia following a fall in 2018. (AR 299–300, 800). Plaintiff alleged that she was unable to work due to the brain injury and suffered from an anxiety disorder, bipolar disorder, depressive disorder, a back injury, an underactive thyroid, high cholesterol, dizziness, heart burn, and esophageal issues. (AR 207). Plaintiff received medication management for her anxiety, bipolar disorder, and depression in 2019 and 2020 (*see* e.g., AR 811, 908) and began therapy in September 2021 for her various mental health conditions. (*See, e.g.*, AR 1111-70, 1716-44).

The Social Security Administration ("SSA") denied Plaintiff's application for SSI on July 19, 2021. (AR 86–90). Plaintiff requested reconsideration of her SSI denial and the SSA affirmed its denial of Plaintiff's application on April 4, 2022. (AR 91–94, 101). Plaintiff requested a hearing before an ALJ, which the Office of Hearing Operations scheduled for January 31, 2023, to be conducted by phone. (AR 148).

On January 31, 2023, the ALJ held a hearing on Plaintiff's disability claims. (AR 38–54). Plaintiff appeared, with attorney Miles Cary as her representative. (AR 40). Plaintiff provided testimony and answered questions posed by the ALJ and by her own representative. (AR 39–47). A vocational expert, Ms. Edith Edwards, also appeared and testified. (AR 47–54). The record also contained evidence from several medical professionals, including a mental assessment prepared

by State Agency psychologist G. David Allen, Ph.D as well as findings by State Agency psychologist Karl Hursey, Ph.D. and Michael McDaniel, M.A.[3]

On April 26, 2023, the ALJ issued a written decision. The ALJ's analysis followed the required five-step sequential evaluation. *See* 20 C.F.R. §§ 416.920(a). The ALJ considered whether Plaintiff: (1) was currently engaged in substantial gainful employment; (2) had a severe impairment; (3) had an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of the regulations that are considered *per se* disabling; (4) had the ability to perform past relevant work; and (5) if unable to return to past relevant work, whether Plaintiff could perform other work that exists in significant numbers in the national economy. *See id.*[4] Before considering step four of the sequential evaluation process, the ALJ determined Plaintiff's residual functional capacity ("RFC"). *See* 20 C.F.R. §§ 416.920(e).[5] In the end, the ALJ held that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act. (AR 17–31).

Plaintiff then requested review of the ALJ's decision by the SSA Appeals Council, which, on November 16, 2023, denied Plaintiff's request, finding no reason under its rules to review the ALJ's decision. (AR 1–6). As a result, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481; (AR 1). Plaintiff was given sixty (60) days to file a civil action challenging the decision.[6] *See* 20 C.F.R. §§ 404.981, 416.1481; AR 2.

---

[3] Plaintiff's appeal is predicated on whether the ALJ sufficiently addressed issues raised by Dr. Allen in drafting Plaintiff's residual functional capacity.

[4] The claimant bears the burden to prove disability for the first four steps of the analysis. *See McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983). The burden then shifts to the Commissioner at step five. *See id.* The regulations promulgated by the Social Security Administration provide that all relevant evidence will be considered in determining whether a claimant has a disability. *See* 20 C.F.R. § 404.1520(a)(3).

[5] An individual's residual functional capacity is their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments.

[6] The 60-day deadline begins five days after the date of the notice letter from the Appeals Council. Therefore, Plaintiff's civil action was timely filed. (AR 2).

On January 12, 2024, Plaintiff filed this civil action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). (Dkt. 1). As discussed below, Plaintiff claims the ALJ erred by failing to sufficiently account for the mental limitations found by Dr. Allen when drafting Plaintiff's RFC. (Dkt. 6). Plaintiff filed her motion for summary judgment on April 17, 2024. (*Id.*). The Commissioner filed his cross-motion for summary judgment, along with a brief in support of his motion and in opposition to Plaintiff's motion, on May 16, 2024. (Dkts. 9, 10, 11).[7] Plaintiff filed a reply on May 30, 2024. (Dkt. 13). After the parties consented to the undersigned's jurisdiction, the case was referred to the undersigned on August 28, 2024. (Dkts. 14, 15, 16). The parties' cross-motions for summary judgment are now ripe for disposition.

## STANDARD OF REVIEW

Under the Social Security Act, the district court will affirm the Commissioner's final decision "when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* (internal quotations and citations omitted). In determining whether a decision is supported by substantial evidence, the court does not "undertake to re-weigh conflicting evidence, make credibility

---

[7] The Commissioner's memorandum in support of his Motion for Summary Judgment (Dkt. 10) and his memorandum in opposition to Plaintiff's Motion for Summary Judgment (Dkt. 11) are identical.

4

determinations, or substitute [its] judgment for that of the Secretary." *Id.* (alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). It is the ALJ's duty, and not that of the reviewing court, to resolve evidentiary conflicts, and the ALJ's decision must be sustained if supported by substantial evidence. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

## FINDINGS OF THE ALJ AND ISSUES ON APPEAL

The record in this case includes several physical and mental examinations performed by various health care providers.[8] (*See, e.g.*, AR 55–84). The issues raised on appeal relate solely to whether the ALJ properly considered the findings of G. David Allen, Ph. D. in fashioning Plaintiff's RFC. (AR 23; 63, 68-72).[9] In determining whether Plaintiff suffered from a medically

---

[8] The Court dispenses with a full description of Plaintiffs' medical history because it is exhaustively described in the administrative record. Additionally, Plaintiff contests only the ALJ's determination of Plaintiff's RFC to perform other work and whether the ALJ's RFC properly addressed the findings of a particular medical expert, Dr. Allen. Plaintiff raises no claims related to the ALJ's determinations about her physical conditions and, accordingly, any such claims have been waived. *See Shinaberry v. Saul*, 952 F.3d 113, 124 n.5 (4th Cir. 2020) (holding that an issue not raised in district court is considered waived).

[9] Also, as discussed below, the findings of State Agency psychologist Karl Hursey, Ph.D. and Michael McDaniel, M.A. are relevant with respect to the ALJ's consideration of the full record.

In April 2022, State Agency psychologist Karl Hursey Ph.D. assessed Plaintiff's mental conditions at the SSA's reconsideration level. (AR 79–80, 83). Dr. Hursey opined Plaintiff had a moderate limitation in the ability to concentrate, persist, or maintain pace, mild limitations in the ability to understand, remember, or apply information and the ability to adapt or manage oneself, and no limitation in the ability to interact with others. (AR 79). Dr. Hursey did not assign specific mental RFC limitations associated with understanding and memory, social interaction, or adaptation. (AR 82–83). But with respect to sustained concentration and persistence limitations, Dr. Hursey (like Dr. Allen) found Plaintiff had a moderate limitation in the ability to carry out detailed instructions. (AR 83). Dr. Hursey explained that "Claimant's work should be limited to simple routine tasks performed in a low stress setting. A low stress setting is defined as having no fast-paced production, no more than occasional changes in the work routine or setting, and no greater than occasional simple decision-making." (AR 83).

In July 2021, Michael McDaniel, M.A., at the request of the West Virginia Disability Determination Service, performed a consultative examination of Plaintiff's mental status and her Neurobehavioral Cognitive Status ("Cognistat"). (AR 366–70). Mr. McDaniel observed that Plaintiff arrived early for her scheduled appointment, drove herself, presented as casually dressed and well groomed, and demonstrated average posture and gait. (AR 366). Plaintiff was "extremely pleasant and cooperative throughout." (*Id.*) Plaintiff reported having depression, bipolar disorder, and anxiety since adolescence, and also that since her 2018 fall, she had suffered from concentration and memory deficit, slower thinking, and word recall problems. (AR 367). On administering the Cognistat, Mr. McDaniel found that Plaintiff had an average rating in most areas[9] but mild to moderate impairment in attention and mild impairment in memory. (AR 368). Mr. McDaniel's mental status examination of Plaintiff revealed normal appearance, attitude/behavior, orientation, thought content, thought process, insight, judgment, suicidal ideation, immediate memory, remote memory, persistence, and pace. (*See* AR 368–69). Plaintiff did have "occasional word finding

determinable impairment and, if so, its severity, Dr. Allen concluded that Plaintiff suffered a mild limitation in understanding, remembering, or applying information, and moderate limitation in concentrating, persistence, or maintaining pace. (AR 62-64).[10]

In conducting a Mental Residual Functional Capacity Assessment of Plaintiff, Dr. Allen concluded that Plaintiff suffered a moderate limitation in the ability to carry out detailed instructions. (AR 70). In describing how this limitation would affect Plaintiff's ability to perform sustained work activities, Dr. Allen concluded the following:

> [Plaintiff] will be inefficient when it comes to activities requiring close attention to detail, especially for prolonged periods. However, [Plaintiff] has sufficient residual for repetitive tasks with breaks once every two hours. [Plaintiff] [s]hould avoid settings where there is demand for rapid productivity. (*Id.*)

The ALJ found this opinion to be partially persuasive. (AR 29). Specifically, the ALJ accepted Dr. Allen's conclusions except for the recommendation that Plaintiff required breaks once every two hours. On this point, the ALJ found Dr. Allen's finding was "not well explained" and "inconsistent with the clinical evidence." In addition, regarding Plaintiff's ability to understand and remember detailed instructions, Dr. Allen determined that Plaintiff suffered from a "[m]ild limitation on C-STAT for delayed free recall [which] suggest[s] [Plaintiff] retains capacity to learn instructions of 1 – 3 step complexity." (AR 69).[11] On this point, the ALJ found Dr. Allen's finding to be persuasive. (AR 29).

---

problems," "somewhat anxious and depressed" mood, and as to her recent memory, she was "able to recall 2 of 4 words without prompting after delay." (AR 369). Mr. McDaniel diagnosed Plaintiff with "Unspecified Neurocognitive Disorder" based on the Cognistat scores, mental status evaluation, previous diagnosis of the condition, as well as WAIS-IV testing scores from 2018, which indicated a "below expectation" processing speed index score. (*Id.*). He also diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder based on her recurrent symptoms. (*Id.*). However, Mr. McDaniel also found that Plaintiff was able to manage her own financial affairs. (*Id.*).

[10] Dr. Allen also found that Plaintiff suffered a mild limitation in adapting or managing herself and no impairment in interacting with others. (AD 63). Plaintiff does not challenge these findings or how they were addressed in the ALJ's RFC. (Dkts. 6, 7).

[11] The C-STAT test apparently refers to the level of impairment on the Cognistat attention scale.

Thereafter, based on the entire record, including the findings of Dr. Allen that the ALJ found to be persuasive, the ALJ determined that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)" (AR 23). With respect to Plaintiff's mental RFC, the ALJ held that Plaintiff is "capable of performing simple routine work tasks that are not an assembly line or production rate pace or involving any strict production quotas. [Plaintiff] is capable of performing work in a low stress work environment, defined as one in which only occasional changes in the work routine or work setting would occur and one where only occasional simple work-related decisions would be required." (*Id.*).

Plaintiff challenges the ALJ's RFC on the grounds that it failed to address two findings of Dr. Allen that the ALJ had found to be persuasive. First, Plaintiff claims the ALJ failed to address Dr. Allen's finding that in performing work related activities Plaintiff would be "inefficient at tasks requiring close attention to detail, particularly for prolonged periods. (Dkt. 7 at 4). Second, Plaintiff alleges the ALJ failed to account for "the limitation for the capacity to learn instructions of 1-3 step complexity" identified by Dr. Allen. (*Id.*). In short, Plaintiff argues that because the ALJ found these opinions to be persuasive, the ALJ was required to either incorporate these findings into Plaintiff's RFC or explain why including them was not necessary. (Dkt. 7 at 3 (citing SSR 96-8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996)).

The Commissioner, on the other hand, argues that substantial evidence supports the ALJ's mental RFC assessment and analysis of Dr. Allen's opinion. (Dkt. 10 at 12). This is because (1) the ALJ properly performed a "source-level" evaluation of Dr. Allen's opinion and is not required to discuss each of his proposed limitations individually; (2) Dr. Allen did not actually impose a "1-3 step complexity limitation" but rather intended the statement to be a "floor" rather than "ceiling"; (3) the ALJ mentioned other evidence inconsistent with both Dr. Allen's two-hour

breaks limitation and Plaintiff's interpretation of the "1-3 step complexity" limitation; (4) substantial support for ALJ's rejection of Dr. Allen's contrary limitations is provided by the ALJ's adoption of Dr. Hursey's RFC limitations; and (5) the ALJ properly explained why they found Dr. Allen's opinion only partially persuasive, and the ALJ's reasonable articulation demonstrates that substantial evidence ultimately supports the RFC assessment. (Dkt. 10 at 12–16).

Plaintiff replies by reiterating her initial arguments and also by asserting that (1) the Commissioner's explanations for why Dr. Allen's limitations were not persuasive are post hoc; (2) the suggestion that Dr. Allen intended his "1-3 step complexity" statement to be a "floor" and not a "ceiling" is unfounded; (3) and the ALJ's explanation of the decision does not satisfy the requirements of SSR 96-8p and other regulations and law. (Dkt. 13 at 2–9).

## ANALYSIS

For the following reasons, the Court will **REVERSE** the ALJ's decision, **GRANT** Plaintiff's Motion for Summary Judgment, **DENY** the Commissioner's Motion for Summary Judgment, and **REMAND** the case to the agency because although the ALJ properly conducted a "source level" persuasiveness analysis of Dr. Allen's opinions and addressed Plaintiff's understanding and memory limitations, the ALJ failed to account for all of Plaintiff's limitations in concentration, persistence, or pace.

### A. The ALJ Properly Evaluated the Persuasiveness of Dr. Allen's Opinions Under the Correct Legal Standard and Addressed Plaintiff's Understanding and Memory Limitations.

An ALJ's decision "should include a discussion of which evidence the ALJ found credible and why, and [the] specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F. 3d 288, 295 (4th Cir. 2013). With respect to an ALJ's RFC findings, the ALJ's decision should "*both* identify evidence that supports his conclusion *and* build an

accurate and logical bridge from [that] evidence to his conclusion." *Woods v. Berryhill*, 888 F. 3d 686, 694 (4th Cir. 2018); *see also* SSR 96-8p, 61 Fed. Reg. 34,474, 34,478 (July 2, 1996) (RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence"). But the ALJ's opinion need not refer to every piece of evidence in the record. *Reid v. Commissioner of Social Sec.*, 769 F. 3d 861, 865 (4th Cir. 2014); *see Thomas v. Berryhill*, 916 F. 3d 307, 311 (4th Cir. 2019).

For claims filed after March 27, 2017, a revised regulatory framework applies to the ALJ's evaluation of the medical opinions or prior administrative medical findings ("PAMFs") of record. *See* 20 C.F.R. § 416.920c. Under the revised regulations, an ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or [PAMF(s)][.]" *Id.* § 416.920c(a). The ALJ must instead "articulate [their] consideration" of all medical opinions or PAMFs of record in terms of persuasiveness, considering the factors of supportability, consistency, relationship with claimant, specialization, and other factors tending to support or contradict a medical opinion or PAMF. *Id.* § 416.920c(c). Of these, supportability and consistency are "most important" factors and the ALJ is required to explain how they were considered in assessing the persuasiveness of each medical opinion or PAMF. *Id.* § 416.920c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMFs] . . . the more persuasive the medical opinions or [PAMFs] . . . will be." *Id.* § 416.920c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) or [PAMFs] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or [PAMFs]. . . will be." *Id.* § 416.920c(c)(2).

The regulations require that the persuasiveness of medical opinions or PAMFs be assessed at the "source level," meaning that the ALJ is not required to articulate how they "considered each medical opinion or [PAMF] from one medical source individually"; rather the opinions in the medical source are considered "together using the factors." *Id.* § 416.920c(a), (b)(1). Thus, the new regulations do not require ALJs to perform a separate persuasiveness analysis for each individual limitation assessed by a medical opinion or PAMF. *See, e.g., Angela U. v. Kijakazi*, No. 2:22-cv-34, 2022 WL 3207455, at *8–9 (E.D. Va. July 19, 2022), *R&R adopted*, 2:22-cv-34-RCY, 2022 WL 3161896 (E.D. Va. Aug. 8, 2022) (collecting cases); *Godfrey v. Kijakazi*, 2021 WL 8014681, at *6 (D.S.C. Sept. 10, 2021), *R&R adopted*, 2022 WL 951620 (D.S.C. Mar. 30, 2022) (collecting cases). An ALJ is not required to adopt every limitation proposed by a source that they find persuasive. *See, e.g., Godfrey*, 2022 WL 951620, at *5; *Matthews v. Kijakazi*, 2022 WL 4535087, at *1 n.2 (W.D. Pa. Sept. 28, 2022). Nor is an ALJ that otherwise addresses the source-level persuasiveness of a medical source and explains their RFC required to explicitly address why they did not adopt certain limitations proposed by that persuasive source.[12] *See, e.g., Godfrey*, 2021 WL 8014681, at *7 (rejecting argument that SSR 96-8p requires ALJ to expressly explain why he did not include RFC limitation that was proposed by one medical source, but not another); *Matthews*, 2022 WL 4535087, at *1 n.2; *Angela D. v. Kijakazi*, 2021 WL 4269361, at *7 (E.D. Va. Sept. 20, 2021); *Yonnes S. v. Saul*, 2021 WL 2767298, at *9 (E.D. Va. March 31,

---

[12] SSR 96-8P, in pertinent part, states that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184, at *7 (July 2, 1996). To the extent that Plaintiff argues that SSR 96-8P here requires the ALJ to explain unadopted opinion limitations lest the ALJ leave an unresolved conflict, Plaintiff is correct that SSR 96-8P has not been rescinded, but courts are split on whether an "ALJ is required to articulate why he or she did not adopt every recommended limitation by each medical source" in light of the new "source-level" regulations. *See Godfrey*, 2021 WL 8014681, at *4 (collecting cases) ("based on a plain reading of the regulations and given the absence of binding case law on the issue, the undersigned cannot conclude that the ALJ erred"); *id.* at *7 (citing *Holohan v. Massanari*, 246 F. 3d 1195, 1202 n.1 (9th Cir. 2001) ("We will not defer to SSRs if they are inconsistent with the statute or regulations")). The Court finds the approach taken in the following cited opinions, including those issued by courts in this district, to be compelling.

2021); *Kimberly D. v. Kijakazi*, No. 4:20-cv-159-RCY-LCL, 2022 WL 854840, at * 3 (E.D. Va. March 22, 2022); *Rheanna J.B. v. Commissioner of Social Security*, 2024 WL 1341031, at *9 (S.D. Ill. March 29, 2024).

In evaluating Dr. Allen's opinion, the ALJ concluded that it was "partially persuasive," explaining

> [Dr. Allen's opinion] found the claimant had a mild to moderate level of impairment that would not prevent learning of one to three step instructions and repetitive tasks with breaks every two hours but should avoid settings with a demand for rapid productivity and can adjust to occasional changes in procedure. This opinion was partially persuasive. The opinion is well explained in terms of objective and diagnostic findings. However, it is not well explained in terms of needing breaks every two hours, which is not well explained with [] specific reasoning. In this regard, this portion of the opinion is inconsistent with the clinical evidence, which does show a mild to moderate impairment rating on the attention scale but an average persistence and steady pace. Further, the claimant's [p]rocessing [s]peed [i]ndex score of 81 fell [] in the lower range, but still within [the] [l]ow [a]verage range of ability, with the remainder of the [index] scores falling well within the [a]verage range. As such, this opinion was persuasive, aside from the limitations discussed above, when forming the [RFC].

(AR 29). For two reasons, the ALJ did not err in evaluating Dr. Allen's opinion generally and her explanation allows the Court to meaningfully review why the ALJ excluded Dr. Allen's "1-3 step complexity" understanding and memory limitation from Plaintiff's RFC.

First, the ALJ properly evaluated Dr. Allen's opinion for persuasiveness along the factors of supportability and consistency. The ALJ found Dr. Allen's opinion "partially persuasive." (AR 29). The ALJ observed that Dr. Allen's opinion "is well explained in terms of objective clinical and diagnostic findings. However, it is not well explained in terms of needing breaks every two hours, which is not well explained with a specific reasoning." Although the ALJ did not expressly invoke the word "supportability," these findings clearly address the supportability of Dr. Allen's opinion with a specific example. *Zabrowski v Commissioner of Social Security*, 115 F. 4th 637, 639 (3d Cir. 2024) ("a judge need not reiterate the magic words 'support' and 'consistent'"). The

11

ALJ similarly noted how Dr. Allen's opinion was not entirely consistent with the record evidence as Dr. Allen's two-hour breaks limitation stood at odds with Mr. McDaniels' observing Plaintiff to have "average" persistence and "steady" pace despite her "mild to moderate" impairment on the attention scale of the Cognistat. (*See* AR 29, 368-69). The ALJ further explained that Dr. Allen's two-hour breaks limitation was inconsistent because Plaintiff's Wechsler Adult Intelligence Scale-Fourth Edition (WAIS IV) results indicated "well within" "average" scores except for her processing speed index score, which was "in the lower range" but "still within low average range." (*See* AR 29, 367–69). Accordingly, the ALJ provided a proper "source-level" legal analysis of the persuasiveness of Dr. Allen's opinions by articulating how he evaluated the "most important" factors of supportability and consistency.[13] 20 C.F.R. § 416.920c. The ALJ thus clearly indicated why they found Dr. Allen's opinion to be "partially persuasive" and the ALJ did so in a manner that allows this Court to "trace the path of [their] reasoning," which is the kind of analysis that the new regulations were intended to facilitate. *See* 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017). Although the ALJ did not address the persuasiveness of every limitation assessed by Dr. Allen, the ALJ was not required to do so. And assuming *arguendo* that the ALJ believed Dr. Allen's "1-3 step complexity"[14] or his "close-detail" limitation were persuasive, the regulations do not require the ALJ to have included them in the RFC.

---

[13] It does not appear that Plaintiff argues otherwise.

[14] The Court rejects the Commissioner's argument that Dr. Allen's statement that "claimant retains capacity to learn instructions of 1 – 3 step complexity" is not a limit or "ceiling" but a "floor." (AR 69; Dkt. 10 at 14). Dr. Allen's narrative comment cannot be plausibly read as a "floor." Even taking the Commissioner's point that Dr. Allen also indicated that Plaintiff was "not significantly limited" in her "ability to understand and remember detailed instructions," the ALJ must account for "limitations identified elsewhere in the record." *See DeCamp v. Berryhill*, 916 F. 3d 671, 676 (7th Cir. 2019) (ALJ erred by relying on state opinion's narrative explanation without accounting for contradictory "checkbox" indications).

Second, despite the ALJ's exclusion of Dr. Allen's proposed "1-3 step complexity" limitation, the ALJ still incorporated similar restrictions in the RFC and established a logical bridge between the evidence and the RFC that allows this Court to understand how the ALJ assessed Plaintiff's RFC limitations in the area of understanding and memory.

Regarding Plaintiff's ability to understand, remember, or apply information (in which the ALJ found Plaintiff to have a mild limitation), the ALJ clearly explained that they limited Plaintiff to simple, routine work tasks to account for "some level of memory deficit from the traumatic brain injury in the form of neurocognitive disorder." AR 27. Notably, the ALJ's restriction to "simple, routine" work tasks is quite similar to Dr. Allen's "1-3 step complexity" restriction,[15] which was also directed towards Plaintiff's understanding and memory limitations. AR 69; *see also id.* ("Mild limitation on [Cognistat] for delayed free recall. Suggest claimant retains capacity to learn instructions of 1 – 3 step complexity"). Thus, the ALJ did not ignore wholesale Plaintiff's limitations in this area and Plaintiff does not suggest why the ALJ's imposed RFC restriction is insufficient to account for Plaintiff's underlying conditions.

The ALJ further explained why she chose the specific memory and understanding limitations that were incorporated into Plaintiff's RFC. The ALJ acknowledged that Plaintiff

---

[15] Dr. Allen's statement that "claimant retains capacity to learn instructions of 1-3 step complexity" is not particularly different from the ALJ's ultimately imposed "simple, routine work" limitation. "Simple" connotes instructions that "are not complicated or intricate," and "routine" tasks involve just a few variables – these descriptors both bear on the complexity of instructions. *See Lawrence v. Saul*, 941 F. 3d 140, 143–44 (4th Cir. 2019). Although "step" limitations often refer to instruction length, *see id.*; *see also Buckwalter v. Acting Commissioner of Social Security*, 5 F. 4th 1315, 1323 (11th Cir. 2021), the plain text of Dr. Allen's opinion intends a relatively restrictive *complexity* limitation not dissimilar in nature to "simple, routine" work. For these reasons, the Court rejects Plaintiff's argument that ALJ's non-inclusion of Allen's "1-3 step complexity" limitation is particularly harmful because *had* it been adopted, it would have precluded performance of the reasoning level 2 occupations adopted by the ALJ. Moreover, even if Dr. Allen's opinion was understood to refer to a restriction in instruction length, it is not clear that reasoning level 2 occupations would have been precluded. *Compare Surprise v. Saul*, 968 F. 3d 658, 662–63 (7th Cir. 2020) (finding no apparent conflict between 1-3 step instruction limitation and reasoning level 2 jobs), *with Delinger v. Berryhill*, 2019 WL 1325929, at *4 (W.D.N.C. March 25, 2019) (finding apparent conflict between 1-3 step instruction limitation and reasoning level 2 jobs). The Court need not resolve whether there is harm on this point because the Court finds that the ALJ has not erred.

testified that she had problems with her short-term memory to the point she would need to be reminded of simple instructions the day after they were explained to her. (AR 21, 24, 25, 46, 223). The ALJ recounted an August 2020 neurology visit at which Plaintiff complained of memory loss and lost two points for delayed recall on a mental status exam (ultimately scoring 27/30) that was otherwise largely nominal. (AR 24–25, AR 800–02). Importantly, she also observed that consultative examiner McDaniels established Plaintiff was able to recall 4 of 4 words immediately ("immediate memory"), was able to provide detailed personal history information without significant difficulty ("remote memory"), was still able to recall 2 of 4 words without prompting after delay ("recent memory"), and had a generally unremarkable mental status examination. (*See* AR 21, 27, 369). The ALJ further noted that Plaintiff had an average WAIS IQ score, (*Id.*), and reported being able to follow written instructions, count change, and use a savings and checking account. (AR 21, 29, 221). And the ALJ's opinion detailed evidence that showed that aside from the foregoing, Plaintiff neither complained of or demonstrated memory problems to her medical providers, whose records instead indicated mental health treatment with medication and therapy but were otherwise nominal with respect to memory. (*See* AR 26 (citing AR 811, 908, 1128, 1138–40, 1149, 1157, 1608, 1725, 2269)). The ALJ ultimately concluded that "the clinical findings and level of treatment do not support greater [understanding and memory] limitations" than that she imposed and stated that Dr. Hursey's opinion (whose limitations she tracked) was "consistent with the intelligence testing[,] . . . conservative level of treatment in the record[,] . . . and with the level of activity of the claimant."[16] (AR 29). Notably, the ALJ did <u>not</u> say the same of Dr. Allen's

---

[16] The fact that the ALJ's assessed RFC limitations track those of Dr. Hursey is not, standing alone, dispositive. *See Terri S. v. Saul*, 2021 WL 168456, at *3 (D. Md. Jan. 19, 2021) (citing *Sizemore v. Berryhill*, 878 F. 3d 72, at 80–81) ("*Sizemore* did not depend upon whether the ALJ "adopted" a particular medical source opinion in whole or in part"). Rather, Dr. Hursey's limitations when considered along with the ALJ's evaluation of the persuasiveness of Dr. Hursey's opinion do further develop the reasons for the ALJ's mental RFC. *Id.*; see *Sizemore*, 878 F. 3d at 81.

opinion. (*See id.*). Thus, it is fairly understandable that the ALJ credited Plaintiff's short-term memory issues but believed that Plaintiff was not overly impaired in this regard, nor did she have issues with respect to her other memory and related mental faculties, and accordingly found that a simple, routine tasks limitation was sufficient to account for Plaintiff's *mild* memory and understanding impairments and that Dr. Allen's closely-related 1-3 step complexity restriction, to the extent it was more restrictive, was unnecessary.[17]

For these reasons the undersigned finds that the ALJ properly evaluated the persuasiveness of Dr. Allen's opinions under the correct legal standard and addressed plaintiff's understanding and memory limitations, and in this regard the ALJ's findings are supported by substantial evidence.

### B. The ALJ Failed to Account for All of Plaintiff's Problems With Concentration, Persistence, or Pace.

The ALJ's treatment of the Plaintiff's ability to maintain concentration, persistence, or pace is more troubling. On this issue, the ALJ plainly stated that Plaintiff had a moderate limitation and the ALJ "considered [it] by reducing the pace of the work the claimant could perform." (AR 27). The ALJ limited Plaintiff's work to "[non-]assembly line or production pace" and prohibited work "involving any strict production quotas" (AR 369), which is consistent with Dr. Allen's statement regarding pace, restricting Plaintiff from "settings where there is demand for rapid productivity." (AR 70). Furthermore, the ALJ explained that they also "considered reductions in processing speed and anxiety and panic attacks by limiting the claimant to low stress work," defined as "one in which only occasional changes in the work routine or work setting would occur and one where

---

[17] The above-discussed evidence recognized by the ALJ constitutes substantial evidence to support the ALJ's determinations with respect to Plaintiff's understanding and memory limitations. Moreover, the relevant record otherwise indicates that Plaintiff neither complained of nor was observed to have such issues at numerous medical visits. (*See* AR 854–55, 867–68, 1127–36, 1139–40. 1157–60, 1174, 1187, 1717–44, 2264, 2269–70.).

15

only occasional simple work-related decisions would be required." (AR 23, 27). Notably absent from the ALJ's opinion, however, is any explanation as to how they accommodated Plaintiff's concentration-specific limitations in the RFC or why such limitations were not necessary.

This omission is problematic because the regulations require the ALJ to base their RFC determination on *all* of Plaintiff's medically determinable impairments. *See, e.g.*, SSR 96-8P, 61 Fed. Reg. at 34,477; *Woods*, 888 F. 3d at 689; *Varga v. Colvin*, 794 F. 3d 809, 813 (7th Cir. 2015) ("[b]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record"). In discussing why Plaintiff had a moderate limitation in concentration, persistence, or pace and later recounting consultative examiner McDaniels' findings in the RFC discussion, the ALJ recognized in part that Mr. McDaniels determined that Plaintiff had a mild to moderate impairment in attention as measured by the Cognistat scale. (AR 22, 27). Notably, the ALJ found Mr. McDaniels' "clinical findings and intelligence testing . . . generally persuasive . . . because they are supported by an in person examination . . . with no indication of invalid testing" and further "consistent with the clinical deficits noted in the treatment records and are consistent with the level of conservative treatment in the record." (AR 27).

But what the ALJ made of Plaintiff's concentration issue is unclear at best. Although Mr. McDaniels did not articulate an opinion as to Plaintiff's functional limitations, *Id.*, Dr. Allen interpreted Mr. McDaniels' findings as supporting an attention/concentration RFC limitation.[18]

---

[18] While Dr. Allen indicated Plaintiff was "not significantly limited" in the "ability to maintain attention and concentration for extended periods," he also stated that "[o]bjective findings per CE suggest limitation for attention and memory" and there is no fair way to understand Dr. Allen's narrative concentration and pace explanation as other than recommending a limitation in <u>each</u> of the sub-categories of concentration, persistence, and pace. (*See* AR 70 ("Claimant will be inefficient when it comes to activities requiring close attention to detail, especially for prolonged periods. However, claimant has sufficient residual for repetitive tasks with breaks once every two hours. Should avoid settings where there is demand for rapid productivity.").

(*See* AR 64, 70). As discussed previously, the ALJ was not necessarily bound to adopt such a limitation as persuasive or even address it, but such omission is not conducive to understanding the ALJ's reasoning as to Plaintiff's concentration problem, especially as the ALJ's summary of Dr. Allen's proposed RFC made no mention of Dr. Allen's concentration-specific close-detail limitation but otherwise included all of his other opinions. (*See* AR 29, 70). Further, the ALJ also acknowledged that Plaintiff herself reported issues with concentration and completing tasks due to her traumatic brain injury (AR 22, 223, 367).[19] But the ALJ did not clearly disclaim such statements,[20] nor is it in any way obvious how the Plaintiff's reports are incompatible with or more severe than indicated by the clinical findings and evidence of record. (*See* AR 22, 24, 45–46, 223, 367–69, 800–02).

Thus, this Court is led to believe that the ALJ was aware and agreed that the record evidence indicated Plaintiff had a sizable concentration impairment, which the ALJ did not seriously dispute or discredit in any way except to obliquely suggest that Plaintiff also "showed average persistence and steady pace" on Mr. McDaniels' mental status exam.[21] (*See* AR 22, 24,

---

[19] The ALJ's summary of evidence also recognized that Plaintiff had demonstrated some attention problems on a mental status examination administered at a neurology visit in 2020 but again, what the ALJ made of this is not self-evident. (AR 25, 800–02)

[20] The ALJ never addressed Plaintiff's concentration-specific complaints individually. Rather, the ALJ declared in general and sweeping, boilerplate terms that "claimant's statements concerning the intensity, persistence, and limiting effects of [the alleged symptoms] are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 24). This declaration was not supported by specific reasoning except to the extent that the ALJ discussed how "the statements and activities of the claimant do not support greater limitations than provided in the [] [RFC]." (AR 27, 28). Even then, such discussion was limited to critique of Plaintiff's account of her activities of daily living and not her other allegations. (AR 28).

[21] Fundamentally, the ALJ clearly stated that she believed Plaintiff had a moderate limitation in concentration, persistence, or pace. (AR 22). Granted, the ALJ did not state if she determined that Plaintiff had a moderate limitation in concentration, persistence, or pace based on evidence across the three subcategories as a whole, or based on the evidence in a subset of those subcategories. (*See* AR 22). But the record, as recounted by the ALJ, evinces significant difficulties with concentration such that it cannot be seriously contended that the ALJ was referring to only persistence or pace and not concentration when she determined Plaintiff had a moderate limitation in the area. *See Varga*, 794 F. 3d at 815 ("The Commissioner suggests that the ALJ was referring only to concentration, although this is nowhere expressed in the decision and not supported by the record").

27, 28). But this observation misses the mark. A better showing in the related but distinct functional subcategories of persistence and pace does not negate Plaintiff's other problems with attention or concentration. *Cf. Varga*, 794 F. 3d at 816 n.3 ("we fail to see how Varga's problems "maintaining concentration for extended periods" were encapsulated by the hypothetical question, which posited an individual able to do unskilled work free of "fast paced production requirements"). Even if the "balancing" of functions against one another were somehow sensical, Plaintiff's WAIS IV processing speed index score being at the "extreme lower end of the low average range of ability" (AR 27) would undercut such "average persistence and steady pace" logic. Thus, the ALJ did not account for Plaintiff's uncontested concentration issues through explanation. Given the fact that the disability claim arises at least in part because Plaintiff suffered a traumatic brain injury, the ALJ's failure to clearly address concentration issues – an obvious consequence to a traumatic brain injury – carries added significance.

Nor can the Court deem the ALJ's error harmless by virtue of Plaintiff's concentration issues having been addressed by the ALJ's other RFC limitations. The ALJ accounted for Plaintiff's moderate concentration, persistence, or pace limitations by expressly imposing *only* a pace restriction, which clearly does not address concentration-specific issues. (AR 27); *Varga*, 794 F. 3d at 816 n.3. The same can be said of the "low stress work" limitation, which was imposed expressly to account for reductions in processing speed and anxiety and panic attacks—the latter two conditions of which appear to have little to do with Plaintiff's brain injury (from which the concentration problem flows) at all. (AR 367); *see Evan H. v. Kijakazi*, 2023 WL 6216647, at *4 & n.5 (D. Md. Sept. 25, 2023) (rejecting relevance of workplace adjustments limitation to concentration, persistence, or pace because it appeared to relate to "adapting or managing oneself" area of mental functioning). Further, on this record, it cannot be said that an attention or

concentration concern similar to that captured by Dr. Allen's statement that "[c]laimant will be inefficient when it comes to activities requiring close attention to detail, especially for prolonged periods" is subsumed within the ALJ's "simple work tasks" limitation or the "low stress" environment's inclusion of "only occasional simple work-related decisions." That is because the latter two pertain to the "ability to perform simple tasks," while the former concerns the different "ability to stay on task"—"Only [a limitation in the ability to stay on task] would account for a claimant's [moderate] limitation in concentration, persistence, or pace" absent further explanation.[22] *See Mascio*, 780 F. 3d at 639.

Accordingly, by failing to "account for all of [Plaintiff's] difficulties maintaining concentration, persistence, and pace" that are supported by the medical record, the ALJ committed reversible legal error. *Varga*, 794 F. 3d at 814–15 (emphasis added).[23]

---

[22]   *See also Brachtel v. Apfel*, 132 F. 3d 417, 421 (8th Cir. 1997) (ALJ adequately accounted for concentration, persistence, or pace deficiencies where ALJ noted "various examinations indicate that the claimant demonstrates few concentration deficits and has a good memory" and "[i]n addition to the ability to do only simple work, the ALJ's hypothetical specifically limited concentration (work "which does not require close attention to detail" and pace ("should not work at more than a regular pace")). Although in some instances where "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the [RFC] to include only [simple, routine tasks] or unskilled work sufficiently accounts for such limitations," such evidence does not exist here. *Winschel v. Commissioner of Social Sec.*, 631 F. 3d 1176, 1180 (11th Cir. 2011) (collecting cases) (citing *Howard v. Massanari*, 255 F. 3d 577, 579–80, 582 (8th Cir. 2001) (deficiencies in concentration, persistence, or pace adequately captured in "simple, repetitive, routine tasks" limitation where supported by opinions of consultative examiner and state expert describing Plaintiff as having sufficient concentration and attention to perform such).

[23]   The Seventh Circuit's opinion in *Varga v. Colvin* is generally instructive of this case for the reasons discussed above. In *Varga*, the court held that a mental RFC limiting the plaintiff to "simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions with few if any work place changes" did not adequately account for concentration, persistence, and pace issues where the record indicated that plaintiff had difficulties in all three areas. 794 F. 3d at 813–16. The court rejected the significance of the "simple, routine, and repetitive tasks" limitation because it did not bear on "whether an individual with mental impairments . . . can perform such work." *Id.* at 814 (collecting cases). The remaining RFC limitations were still insufficient to account for Plaintiff's problems with concentration, persistence, or pace, as the workplace change and interaction restriction dealt with different functionality in "workplace adaptation" and the pace limitation did not capture the plaintiff's concentration difficulties. *Id.* at 815–16 n.3. Here, the ALJ assessed a mental RFC nearly identical to that of the *Varga* ALJ and the record establishes in part that Plaintiff has a concentration problem. And, like in *Varga*, it is unclear how the ALJ's workplace adaptation or pace restrictions could account for that problem.

19

## I. CONCLUSION

For the foregoing reasons, the Court finds that remand pursuant to the fourth sentence of 42 U.S.C. § 405(g) is warranted. On remand, the ALJ should account for all of Plaintiff's difficulties with concentration, persistence, or pace in formulating her RFC, as consistent with the regulations.

Accordingly, it is hereby

**ORDERED** that the final decision of the Commissioner denying benefits is **REVERSED**; it is further

**ORDERED** Plaintiff's Motion for Summary Judgment (Dkt. 6) is **GRANTED**; and it is further

**ORDERED** that Commissioner's Motion for Summary Judgment (Dkt. 9) is **DENIED**; and it is further

**ORDERED** that this case is remanded to the agency for further proceedings consistent with this Memorandum Opinion and Order.

The Clerk is directed to terminate this civil action.

**ENTERED** this 31st day of March 2025.

*William C. Fitzpatrick*
WILLIAM E. FITZPATRICK
United States Magistrate Judge

Alexandria, Virginia